In re the MARRIAGE OF Rhonda
J. BEECHER and Mark R.
Beecher

Upon the Petition of Rhonda J. Rupert
f/k/a Rhonda J. Beecher,
Appellant,

And Concerning Mark R.
Beecher, Appellee.

No. 96–1104.

Supreme Court of Iowa.

July 29, 1998

Roger J. Hudson and Stacey N. Warren of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney & Shindler, P.C., Des Moines, for appellant.

Robert H. Laden and Gregory D. Brandt of Hyland, Laden & Pearson, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

We granted further review of a court of appeals decision in this challenge to an order modifying child support. The non-custodial parent's net monthly income exceeds $6000, and the question is whether special circumstances can and should justify a monthly payment of less than the $1650 minimum provided for such an income in the guidelines. The district court fixed the amount at $1200. We find no justification for setting the amount below $1650 and remand for an order requiring payment of that amount plus a portion of the parent's annual bonus.

The marriage between Mark and Rhonda Beecher was dissolved in 1991. They are the parents of four sons, Beau, Rhett, Jeremy, and Marcus, all of whom except Beau were minors at the time of the dissolution. The parties received the boys' joint legal custody, with Mark initially awarded their primary physical care. Although not ordered to do so, Mark provided substantial monetary support to the two older boys while they attended college.

During the summer of 1995 Mark moved to California with Jeremy and Marcus to accept a job as senior vice president of a bank at a substantial increase in salary. Rhonda thereafter filed an application for modification, requesting physical custody of Jeremy and Marcus and child support. She believed the boys should stay in Iowa because the move to California would have an adverse effect on them. The application was granted and Rhonda was awarded primary custody of the boys. In calculating the amount of child support Mark was to pay, the district court found Mark had a base annual salary of $139,200 with a net monthly income of $7228. This figure included a $400 per month auto allowance and, until 1999, a $1197 per month home subsidy Mark received as employee benefits. It did not however include income Mark was to receive as a bonus at the end of the year. Rhonda's net monthly income was computed at $906. These net monthly incomes are not challenged on appeal.

The court set support at $1200 per month, plus twenty-five percent of any net bonus Mark would receive from work. This was to continue until the older child, Jeremy, reached eighteen or graduated from high school. At that time Mark was ordered to pay $720 per month plus fifteen percent of any net bonus until Marcus reached eighteen or graduated from high school. The district court recognized Mark's monthly child support payment was considerably lower than called for under the guidelines, but found there was justification for the deviation on grounds we discuss later. The court believed its departure from the guidelines would not create a hardship on Rhonda in view of her successful remarriage.

On Rhonda's appeal, the court of appeals majority found there was no authority to reduce the amount below the $1650 provided in the guidelines, and ordered the support order modified to require Mark to pay that amount. It also ordered that Mark pay the percentage of bonuses specified by the district court.

The matter is before us on further review.

I. The case was tried in equity. Our review is therefore de novo. Iowa R.App. P. 4. We examine the entire record

and adjudicate anew rights on the issues properly presented. *In re Marriage of White,* 537 N.W.2d 744, 746 (Iowa 1995). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App. P. 14(f)(7); *In re Marriage of Gaer,* 476 N.W.2d 324, 326 (Iowa 1991).

■ The purpose of the child support guidelines is to provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes. Although the guidelines cannot accommodate all specific facts of individual cases, they will normally provide reasonable support. The amount of support provided by the guidelines is presumed to be correct. *State ex rel. Dep't of Human Servs. v. Cottrell,* 513 N.W.2d 765, 768 (Iowa 1994). The guideline amount may however be adjusted upward or downward if the court finds an adjustment necessary to provide for the needs of the child and to do justice between the parties under the special circumstances of the case. *Id.*

■ II. Our support guidelines are pegged to the parent's net monthly income and the number of children involved. The percent of income required varies for amounts up to $6000 net income per month. For a net monthly income in excess of $6000 our guidelines provide:

> In this range the appropriate figure is deemed to be within the sound discretion of the court or the agency fixing support by administrative order. The amount of support payable by a non-custodial parent with a monthly net income of $6001 or more shall be no less than the dollar amount as provided for in the guidelines for a non-custodial parent with a monthly net income of $6000.

This guideline calls for Mark to make payments no less than a non-custodial parent with a net monthly income of $6000. For a non-custodial parent of two children (where the custodial parent's net monthly income is $906) the guidelines call for support of $1650 ($6000 × 27.5%). In this case, the district court, exercising the discretion accorded it

under the above guideline, first calculated Mark's monthly support figure by multiplying 27.5% by his net monthly income of $7228, resulting in $1988. It then, based on the reasons to be discussed, reduced the support to $1200 per month, plus 25% of his net bonus.

As to non-custodial parents earning a net monthly income in excess of $6000, the parties dispute whether the guidelines ever permit an adjustment, even under special circumstances, below the amount specified for the $6000 income level. The court of appeals concluded the support amount cannot be so reduced, that only upward adjustments could be ordered. The court of appeals based its determination that support payments could not be adjusted downward on the quoted language in our guidelines which state that a child support order for "a non-custodial parent with a monthly net income of $6001 or more *shall be no less* than the dollar amount ... for a non-custodial parent with a monthly net income of $6000." (Emphasis added.) Such a view reads too much into the quoted language. The resulting figure—$1650 per month in this case—in common with all other figures derived from the guidelines, is preliminary in the sense that it is subject to consideration for adjustment upward or downward when special circumstances warrant it. The general provision in our guidelines empowering courts to depart from the recommended child support amounts because of special circumstances reads as follows:

> [The amount of child support] may be adjusted upward or downward, however, if the court finds such adjustment necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case.

This provision is not at all ambiguous. It is not limited to situations in which the net monthly income of a non-custodial parent is $6000 or less. It applies to all child support orders, irrespective of the net monthly income of the non-custodial parent.

■ III. The district court justified its downward deviation from the guidelines on a number of grounds. One was Mark's payment of the boys' medical expenses. But

the guidelines state "[a]ny premium cost of a· health benefit plan or medical support plan *which has not been considered in computing net monthly income* may be considered by the court as a reason for varying from the guidelines." (Emphasis added.) Mark's costs of providing medical insurance for the boys was used as a deduction in calculating his net income. The trial court therefore incorrectly found this expense was a special circumstance that mandated a downward adjustment from the guidelines. To do so allowed a double deduction for health insurance that is not contemplated by the guidelines. There is also nothing in the record to indicate that Mark has been required to pay for any unusual medical expenses for the boys. Risk of doing so does not justify a deviation from the guidelines.

■ The district court also cited the high cost of Mark's home in California, suitable for the boys. A quick response for considering an expensive home in California is that, under the change, the boys are not being raised there. But there is more. In establishing the guidelines, we balance "the needs of children against the legitimate needs and expenses of the payor parent." *State ex rel. Dep't of Human Servs. v. Burt,* 469 N.W.2d 669, 670 (Iowa 1991). Put another way, the guidelines already take into consideration the reasonable living expenses of the non-custodial parent. *Id.* The living expenses of the non-custodial parent ordinarily do not provide a basis for departing from the guidelines. *Id.; see also In re Marriage of Nelson,* 570 N.W.2d 103, 108–09 (Iowa 1997) (special circumstances did not exist for downward departure in child support payment even though net monthly income was not enough to meet total monthly expenses); *State ex rel. Weber v. Denniston,* 498 N.W.2d 689, 691 (Iowa 1993) (mere fact that a child support obligor's actual living expenses makes it burdensome to pay support at guideline level is not sufficient cause for deviating from guidelines); *State ex rel. Epps v. Epps,* 473 N.W.2d 56, 58 (Iowa 1991) (unless special circumstances are revealed by record, obligor's reasonable living expenses will furnish no ground for departure from presumptively correct child support guideline amount).

■ We do not find any special circumstances in this record justifying a downward departure from the guidelines. Mark's move to California was for a higher paying job. His increased income inured to the benefit of his sons and results in the corresponding increase in the amounts due for their support under the guidelines. The· more expensive home in California was intended to benefit the boys. Both the income and more expensive home however also inured to Mark's own benefit. The California home and the higher living cost there are not grounds for departure from the guidelines.

■ The court also cited the fact that Mark must bear eighty percent of transporting the boys to California for visitation. These transportation costs though, like the expensive home and high cost of living in California, were likewise also for Mark's personal benefit and do not justify a departure from the guidelines. Mark's commendable support for his children's college expenses are also not germane in determining his financial ability under the guidelines. *See State ex rel. Nielsen v. Nielsen,* 521 N.W.2d 735, 738 (Iowa 1994).

■ The district court's final stated ground for deviation is Rhonda's remarriage. Standing alone, remarriage does not constitute a special circumstance which otherwise warrants departure from the guidelines. *In re Marriage of Gehl,* 486 N.W.2d 284, 287 (Iowa 1992); *see also Epps,* 473 N.W.2d at 59 (enforcement of child support guidelines would not result in substantial injustice, even given father's commitment to a second family); *In re Marriage of Ladely,* 469 N.W.2d 663, 665 (Iowa 1991) (fact that former husband had new family was not a special circumstance justifying deviation from guideline level of support for child of first family).

We conclude the facts Mark presents do not support a deviation from the guidelines. The district court erred in considering them as adequate for that purpose. In special circumstances the district court is empowered to fix support for one with Mark's earnings below the amount specified for those earning $6000. But we conclude no special

circumstances appear in this record which would justify doing so.

IV. We agree with the district court's determination, affirmed by the court of appeals, that Mark should pay a percentage of any bonuses he receives as specified in the district court decree. Although we reach the result under a slightly different analysis, we agree with the court of appeals' conclusion that Mark should be ordered to pay $1650 per month (plus twenty-five percent of any net bonus received) from May 1, 1996. The support shall decrease to $1122 per month (plus fifteen percent of any net bonus received) when Jeremy becomes eighteen years of age or graduates from high school, whichever is later. Such support shall continue until Marcus becomes eighteen years of age or graduates from high school, whichever is later. The district court's order must be modified and the case remanded for entry of judgment accordingly.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**